IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **MICROTEL INNS AND SUITES FRANCHISING, INC.,** | |
| **Plaintiff,** | |
| v. | 1:15-cv-01863-WSD |
| **ANIRA HOTELS, INC., NAYANKUMARI PATEL, and CHUNILAL PATEL,** | |
| **Defendants.** | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff Microtel Inns and Suites Franchising, Inc.'s ("MISF") Motion for Entry of Default Judgment as to Defendants Anira Hotels, Inc., Nayankumari Patel, and Chunilal Patel (collectively, "Defendants") [13].

**I.   BACKGROUND**

　　A.   Facts

MISF is a Georgia corporation with its principal place of business in Parsippany, New Jersey.  (Compl. [1] ¶ 1).  Defendant Anira Hotels, Inc. ("Anira") is a Florida corporation with its principal place of business in Jacksonville, Florida.

(Id. ¶ 2). Individual Defendants Nayankumari Patel and Chunilal Patel are the principals of Anira and are citizens of Florida. (Id. ¶¶ 3-4).

On January 6, 2006, Anira entered into a license agreement (the "License Agreement") with MISF to operate a 97-room Microtel® guest lodging facility located at 4940 Mustang Road, Jacksonville, Florida 32216 (the "Hotel") for twenty years. (Id. ¶¶ 9-10). Under the terms of the License Agreement, Anira agreed to make monthly payments to MISF for "royalties, marketing/reservation contribution, taxes, interest, reservation system user fees, and other fees" (collectively, "Recurring Fees"). (Id. ¶ 11). Anira also agreed to an interest penalty equal to "the lesser rate of one and one-half percent (1.5%) per month or the maximum rate permitted by law" for late payments of Recurring Fees. (Id. ¶ 12). The License Agreement allowed MISF to terminate the agreement with notice to Anira "if Anira failed to pay MISF any fees or other amounts due under the License Agreement." (Id. ¶ 15). In the event of a termination, the License Agreement permitted MISF to demand liquidated damages in an amount equal to $3000 for each guest room Anira operated at the Hotel. (Id. ¶ 16; License Agreement [1.1], [1.2] ¶ 10E).

To help Anira defray the cost of converting the Hotel to a Microtel® guest lodging facility, the License Agreement provided a $100,000 financial incentive

from MISF to Anira.  (Id. ¶ 17).  On each anniversary of the Hotel's opening date, one-tenth (1/10th) of the original principal amount of the financial incentive would be forgiven without payment, but, in the event of a termination, Anira agreed to repay the outstanding balance of the financial incentive.  (Id. ¶¶ 17-18).

Contemporaneously to to the execution of the License Agreement, N. and C. Patel executed a joint and several guaranty of Anira's obligations under the agreement.  (Id. ¶ 20; Guaranty [1.3]).

Beginning February 7, 2012, MISF sent a series of letters advising Anira that it was in breach of the License Agreement for failing to meet its financial obligations under the License Agreement.  ([1] ¶¶ 23-28; February 7, 2012, Letter [1.4]; March 22, 2012, Letter [1.5]; July 10, 2012, Letter [1.6]; August 20, 2012, Letter [1.7]; November 20, 2012, Letter [1.8]).  MISF warned Anira that if the default was not cured, the License Agreement might be subject to termination.  (Id.).  On December 31, 2012, MISF terminated the License Agreement.  ([1] ¶ 29; December 31, 2012, Letter [1.9]).

B. Procedural History

On May 22, 2015, MISF filed this action for breach of contract.  (Id.).  On June 6, 2015, MISF served the Complaint on Anira and C. Patel.  ([5], [6]).  On

March 13, 2016, MISF served the Complaint on N. Patel.[1] ([11]). Defendants failed to respond, and no counsel appeared on their behalf.

On April 26, 2016, MISF filed its Motion for Clerk's Entry of Default Against Defendants [12] based on Defendants' failure to respond to the Complaint. On April 27, 2016, the Clerk entered default against Defendants.

On July 29, 2016, MISF moved for default judgment. ([13]). MISF is seeking to recover outstanding Recurring Fees, liquidated damages, remaining principal balance of the financial incentive, prejudgment interest, and postjudgment interest. (Id.).

## II.   DISCUSSION

### A.   Legal Standard

Rule 55(b) of the Federal Rules of Civil Procedure provides that default judgment may be entered against defaulting defendants as follows:

> (1)   **By the Clerk**.  If the plaintiff's claim is for a sum certain or a sum that can be made certain  by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

---

[1]   MISF's previous attempts to serve N. Patel were futile as N. Patel was unreachable at its last known address.  ([7]).

4

>  (2)   ***By the Court***.  In all other cases, the party must apply to the court for a default judgment. . . .  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.  The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to:
>  (A)   conduct an accounting;
>  (B)   determine the amount of damages;
>  (C)   establish the truth of any allegation by evidence; or
>  (D)   investigate any other matter.

Fed. R. Civ. P. 55(b).

"[T]here is a strong policy of determining cases on their merits . . . . [Courts] therefore view defaults with disfavor."  In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1295 (11th Cir. 2003).  "The entry of a default judgment is committed to the discretion of the district court."  Hamm v. DeKalb Cnty., 774 F.2d 1567, 1576 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986) (citing 10A Charles Alan Wright, et al., Federal Practice & Procedure § 2685 (1983)).

When considering a motion for default judgment, a court must investigate the legal sufficiency of the allegations and ensure that the complaint states a plausible claim for relief.  Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1278 (11th Cir. 2005); Bruce v. Wal-Mart Stores, Inc., 699 F. Supp. 905, 906 (N.D. Ga. 1988).  If "the plaintiff has alleged sufficient facts to state a plausible claim for relief," a motion for default judgment is warranted.  Surtain v. Hamlin Terrace

5

Found., 789 F.3d 1239, 1246 (11th Cir. 2015). "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." Id. at 1245. "[W]hile a defaulted defendant is deemed to 'admit[] the plaintiff's well-pleaded allegations of fact,' he 'is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" Cotton, 402 F.3d at 1278 (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).

B.  Breach of Contract

To assert breach of contract under Georgia law,[2] a plaintiff must show (1) a valid contract, (2) material breach of its terms, and (3) damages arising from that

---

[2]  The Court applies the law required by Georgia's choice-of-law rules, so long as the application does not violate the parties' due process rights. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 821-22 (1985); Keener v. Convergys Corp., 342 F.3d 1264, 1267-68 (11th Cir. 2003); Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc., 92 F.3d 1110, 1115 (11th Cir. 1996) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)); see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 672 F.3d 155, 157 (2d Cir. 2012) ("A federal court sitting in diversity or adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state." (internal quotation omitted)). Unless the chosen law is contrary to Georgia public policy, Georgia courts generally accept choice-of-law provisions contained in contracts. See Convergys Corp. v. Keener, 582 S.E.2d 84, 85-86 (Ga. 2003).

Here, the License Agreement contains a choice-of-law provision calling for the application of Georgia law to the interpretation and enforcement of the agreement. (License Agreement [1.1], [1.2] ¶ 13M). Accordingly, the Court applies Georgia law.

breach.  See Budget Rent-A-Car of Atlanta, Inc. v. Webb, 469 S.E.2d 712, 713 (Ga. Ct. App. 1996); see also Bates v. JPMorgan Chase Bank, NA, 768 F.3d 1126, 1130 (11th Cir. 2014).  Here, the Clerk has entered default against Defendants.  The legal effect of Defendants' default is that they have now admitted the facts recited in the Complaint.  Having carefully reviewed the Complaint and its allegations of facts, the Court concludes that MISF has sufficiently alleged all of the required elements needed to prove a breach of the License Agreement.

    C.    Damages

MISF seeks to recover the following damages: (1) unpaid Recurring Fees, inclusive of interest; (2) liquidated damages; (3) remaining principal balance of the financial incentive; (4) prejudgment interest, and (5) postjudgment interest.  ([13.1] at 10).

The Court may grant default judgment and award damages without a hearing if "the amount claimed is a liquidated sum or one capable of mathematical calculation."  Adolph Coors Co. v. Movement Against Racism and the Klan, 777 F.2d 1538, 1543 (11th Cir. 1985); United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir.1979).  "While a party in default admits the well-pleaded allegations of the complaint against it, a plaintiff cannot satisfy the certainty amount by simply requesting a specific amount.  He must also establish that the

amount is reasonable under the circumstances." Elektra Entm't Grp., Inc. v. Jensen, No. 1:07-CV-0054-JOF, 2007 WL 2376301, at *2 (N.D. Ga. 2007) (internal quotation omitted); see also Adolph Coors, 777 F.2d at 1544 ("Damages may be awarded only if the record adequately reflects the basis for award."). The Court is obligated to assure (i) there is a proper basis for the damage award it enters, and (ii) that damages are not awarded solely as the result of an unrepresented defendant's failure to respond. Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1265 (11th Cir. 2003).

1. Recurring Fees

MISF seeks reimbursement for outstanding Recurring Fees under Paragraphs 3A(11), 3D, 14B, and 14C of the License Agreement. ([13.1] at 2; Aff. Suzanne Fenimore [13.2] ¶ 5 ("Fenimore Aff.")). MISF also seeks interest on its award of Recurring Fees. ([13.1] at 8). In a diversity case, courts follow the state law governing the award of prejudgment interest. SEB S.A. v. Sunbeam Corp., 476 F.3d 1317, 1320 (11th Cir. 2007) (citing Royster Co. v. Union Carbide Corp., 737 F.2d 941, 948 (11th Cir. 1984)). Georgia law permits the recovery of prejudgment interest "[i]n all cases where an amount ascertained would be the damages at the time of the breach, [and the damages] may be increased by the addition of legal interest from that time until the recovery." O.C.G.A. § 13-6-13.

The Court concludes that recovery of interest is proper, and MISF may recover Recurring Fees inclusive of interest.

MISF further asserts, and the Court agrees, that an interest rate of 1.5% per month is proper for calculating interest on Recurring Fees.  ([13.1] at 8-9).  Under Paragraph 3D(6) of the License Agreement, a simple interest is applied on past-due Recurring Fees at a rate equal to "the lesser rate of one and one-half percent (1.5%) per month or the maximum rate permitted by law."  (License Agreement [1.1], [1.2] ¶ 3D(6)).  Because the parties expressed the rate of interest for past-due Recurring Fees, the Court will apply the interest rate stated in the contract.  See Noons v. Holiday Hosp. Franchising, Inc., 307 Ga. App. 351, 355, 705 S.E.2d 166, 170 (2010) (applying the interest rate stated in the contract because O.C.G.A. § 7-4-16 does not apply for breach of contract); Northside Bank v. Mountainbrook of Bartow Cty. Homeowners Ass'n, Inc., 338 Ga. App. 126, 128, 789 S.E.2d 378, 381 (2016) (Statutory rate provided by O.C.G.A. § 7-4-2 did not apply because the parties expressed the rate of interest in the contract.); O.C.G.A. § 7-4-2.

Using the interest rate of 1.5% per month, MISF calculates that the outstanding Recurring Fees are in the amount of $264,231.81, inclusive of interest

through July 27, 2016.³  (Fenimore Aff. [13.2] ¶ 24; Itemized Statement [13.6]). The itemized statement submitted with the Fenimore Affidavit details unpaid Recurring Fees from February 11, 2009, to December 31, 2012.  (Itemized Statement [13.6] at 74-87).  The statement lists the total outstanding balance as $264,231.81, as of July 27, 2016.  The Court determines that MISF's request for Recurring Fees and interest in the amount of $264,231.81 is reasonable, and that amount is awarded.

### 2. Liquidated Damages

MISF seeks liquidated damages under Paragraph 10E of the License Agreement.  ([13.1] at 6).  Georgia law provides that contracts for liquidated damages can be valid and enforceable.  O.C.G.A. § 13-6-7 ("If the parties agree in their contract what the damages for a breach shall be, they are said to be liquidated and, unless the agreement violates some principle of law, the parties are bound thereby.").  "To qualify as an enforceable liquidated damages provision three factors must be present: first, the injury caused by the breach must be difficult or impossible of accurate estimation; second, the parties must intend to provide for damages rather than for a penalty; and, third, the sum stipulated must be a

---

³   MISF's itemized statement is current as of July 27, 2016.  In its motion, MISF, however, states that the interest is through July 29, 2016.  ([13.1] at 9).

reasonable pre-estimate of the probable loss."  Jamsky v. HPSC, Inc., 238 Ga. App. 447, 449, 519 S.E.2d 246, 247 (1999).

MISF asserts that the purpose of the liquidated damages is "to compensate MISF for the damages it suffers if a license agreement terminates before expiration."  ([13.2] ¶ 25).  "When the parties sign a License Agreement, it is difficult, if not impossible to precisely estimate these damages," MISF explains.  (Id. ¶ 27).  This is because unlike "other commercial real estate activities with more certain revenues produced by longer rental with the same tenant, the transient lodging business operates for the most part, with daily rentals to different guests."  (Id.).  The liquidated damages thus attempt to forecast the "lost Recurring Fees that MISF would otherwise have received but for the premature termination."  (Id. ¶ 26).

Having carefully reviewed the License Agreement, the Court concludes that all three factors are present here.  First, the parties acknowledged that MISF "will suffer substantial damages by virtue of the termination" of the License Agreement and that "damages are difficult to estimate accurately."  (License Agreement [1.1], [1.2] ¶ 10E).  Second, Paragraph 10E(2) explains that the liquidated damages "shall not be considered a penalty" and "is in addition to, not in lieu of, [Licensee's] obligation to pay other amounts due" under the License Agreement.

11

(Id. ¶ 10E(2)).  Finally, the Court finds that the liquidated damages calculated under the formula provided in the License Agreement are a reasonable pre-estimate of the probable loss.  (See id. ¶ 10E(2)).

Paragraph 10E(2) provides that the liquidated damages are equal to the greater of (i) three thousand dollars ($3,000) multiplied by the number of approved guest rooms at the Hotel; or (ii) the average monthly Royalty Fees and Contributions for the twelve-month period preceding the month of termination multiplied by thirty-six.  (Id.).  MISF elects to calculate the liquidated damages based on the number of guest rooms at the Hotel.  (Fenimore Aff. [13.2] ¶ 30).  At the time of the termination, Anira was operating 97 guest rooms at the Hotel, so $3,000 multiplied by 97 guest rooms is $291,000.  (Id.).  The Court concludes that MISF is entitled to $291,000 in liquidated damages.

       3.      Financial Incentive

MISF seeks the remaining principal balance of the financial incentive provided to Anira.  ([13.1] at 7).  Under Paragraph 14A of the License Agreement, Anira received $100,000 to help defray the cost of converting the Hotel to a Microtel® guest lodging facility.  (License Agreement [1.1], [1.2] ¶ 14).  One each anniversary of the Hotel's opening date, one-tenth of the original principal amount was forgiven without payment.  (Id.).  The Hotel opened on or about September 1,

2006, and the License Agreement terminated on December 31, 2012.  (License Agreement [1.1], [1.2] ¶ 14; December 31, 2012, Letter [1.9]).  At the time of termination, the Hotel has been open for at least six years.  Because the License Agreement terminated before the seventh anniversary of the Hotel's opening, the remaining principal is $40,000.  (Id.).  The Court concludes that MISF is entitled to $40,000 as the remaining principal balance of the financial incentive.

      4.      Prejudgment Interest

MISF also seeks prejudgment interest on the liquidated damages and on the remaining principal balance of the financial incentive.  ([13.1] at 9; [13.2] ¶¶ 32, 34).  Georgia law provides that "[a]ll liquidated demands, where by agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party shall become liable and bound to pay them."  O.C.G.A. § 7-4-15.  The Court agrees that MISF is entitled to recover prejudgment interest on the liquidated damages and on the remaining principal balance of the financial incentive.  See Koncul Enters. Inc. v. Nationscredit Fin. Servs. Corp., No. 400CV141, 2001 WL 34052996, at *2-3, 7 (S.D. Ga. 2001) (awarding prejudgment interest where the damages were based on a reasonable lost profits calculation and plaintiff's entitlement to prejudgment interest under Georgia law was undisputed).

MISF asserts, but the Court disagrees, that MISF is entitled to prejudgment interest calculated at the rate of interest of 1.5% per month, or 18% per year. ([13.1] at 8).  Deviation from the statutory percentage is authorized only where a written agreement specifies the rate.  Quintanilla v. Rathur, 490 S.E.2d 471, 477 n.4 (Ga. Ct. App. 1997) (citing Atlantic States Constr. v. Beavers, 169 Ga. App. 584, 591, 314 S.E.2d 245, 252 (1984)); see also Smith v. Am. Int'l Life Assur. Co. of New York, 50 F.3d 956, 958 (11th Cir. 1995) (approving reliance on state statutory interest rates to calculate prejudgment interest).  Paragraph 3D(6) only provides for interest at 1.5% per month for the overdue amount of Royalty Fees. (License Agreement [1.1], [1.2] ¶ 3D(6)).  The liquidated damages clause, stated in Paragraph 10E of the License Agreement, does not provide the applicable interest rate for interest on the liquidated damages nor does it reference Paragraph 3(D) to establish the applicable interest rate.[4]  (Id. ¶ 10E).  Paragraph 14 of the License Agreement, which governs the payback of the financial incentive, is silent as to any possible interest.  (Id. ¶ 14).  Notwithstanding the above, MISF asserts that

---

[4] The Court further notes that the survival clause (i.e., Paragraph 10D(4) of the License Agreement) does not provide for the survival of Paragraph 3D, whereas the survival of Paragraph 10E is mandated both by the survival clause at Paragraph 10D(4) and within Paragraph 10E itself.  (License Agreement [1.1], [1.2] ¶¶ 10D(4), 10E).

Paragraph 3D(6) of the License Agreement controls the interest rate for the entire agreement.  ([13.1] at 8-9).

Georgia law requires courts "to interpret any isolated clauses and provisions of the contract in the context of the agreement as a whole" and "to construe any ambiguities most strongly against the party who drafted the agreement."  <u>Willesen v. Ernest Commc'ns, Inc.</u>, 323 Ga. App. 457, 460, 746 S.E.2d 755, 758 (2013) (citations omitted).  Interpreting the License Agreement as a whole, the Court finds that the interest rate for unpaid Recurring Fees is not applicable for determining prejudgment interest on the liquidated damages or on the principal of the financial incentive.  See <u>Six Continents Hotels, Inc v. CPJFK, LLC</u>, No. 09-CV-2021 ARR JMA, 2012 WL 4057503, at *4 (E.D.N.Y. Sept. 11, 2012), <u>report and recommendation adopted as modified sub nom</u>. <u>Six Continents Hotels, Inc. v. CPJFK, LLC</u>, No. 09-CV-2021 ARR JMA, 2012 WL 4672904 (E.D.N.Y. Sept. 14, 2012) (applying Georgia's statutory interest rate for prejudgment interest on the liquidated damages and the parties' contractual interest rate for prejudgment interest on the unpaid fees); see also <u>Ramada Worldwide Inc. v. Southport, LLC</u>, No. 11-CV-03676 DMC JAD, 2013 WL 3286115, at *8 (D.N.J. 2013) (finding the interest provision contained in the section for recurring fees not applicable to the subsequent section regarding liquidated damages); <u>Ramada Franchise Sys. Inc.</u>,

v. Polmere Lodging Corp., No. 98–2909, 1999 U.S. Dist. LEXIS 23435, at *11 (D.N.J. 2009) (same).  Accordingly, the Court applies the legal rate of 7% per year as set in O.C.G.A. § 7-4-2.

For the prejudgment interest on the liquidated damages, simple interest at the legal rate of 7% per year on $291,000 totals $20,370 in interest per year, or $55.81 per day.  Under Paragraph 10E(2) of the License Agreement, the liquidated damages are due within 15 days after MISF gave its notice for liquidated damages on December 31, 2012.  (License Agreement [1.1], [1.2] ¶ 10E(2)).  The prejudgment interest on the liquidated damages thus begins accruing on January 15, 2013,[5] until the date of entry of final judgment.  There are 1477 days between January 15, 2013, and January 31, 2017.  Accordingly, the prejudgment interest on the liquidated damages for 1477 days amounts to $82,431.37.

For the prejudgment interest on the remaining principal balance of the financial incentive, simple interest at the legal rate of 7% per year on $40,000 comes to $2,800 in interest per year, or $7.67 per day.  Under Paragraph 14 of the License Agreement, the balance of the financial incentive are due within 10 days from the date of termination on December 31, 2012.  (Id. ¶ 14).  The prejudgment

---

[5]  Paragraph 10E(2) of the License Agreement requires Anira to pay "the liquidated damages within 15 days" after MISF gave its notice for liquidated damages on December 31, 2012.  (License Agreement [1.2] ¶ 10E(2) at 8).

interest on the unpaid principal of the financial incentive thus begins accruing on January 10, 2013, until the date of entry of final judgment.  From January 10, 2013, to January 31, 2017, there are 1482 days.  Accordingly, the prejudgment interest on the principal of the financial incentive for 1482 days amounts to $11,366.94.

The Court concludes that MISF is entitled to prejudgment interest on the liquidated damages and on the remaining balance of the financial incentive, in the amount of $93,798.31.

### 5. Postjudgment Interest

"[I]n awarding postjudgment interest in a diversity case, a district court will apply the federal interest statute, 28 U.S.C. § 1961(a), rather than the state interest statute." Ins. Co. of North America v. Lexow, 937 F.2d 569, 572 n.4 (11th Cir. 1991); see Allstate Ins. Co. v. Palterovich, 653 F. Supp. 2d 1306, 1332 (S.D. Fla. 2009) ("The methodology for calculating the postjudgment interest rates for the state law claims follows the federal standard.").

MISF is entitled to postjudgment interest under 28 U.S.C. § 1961(a) on the entire judgment entered in this case, including any interest that forms part of the judgment.  Ins. Co. of N. Am. v. Lexow, 937 F.2d 569, 572 n.4 (11th Cir. 1991) (finding that postjudgment interest should be awarded on the entire amount of the

judgment, including award of prejudgment interest); Bryant Motors, Inc. v. Blue Bird Body Co., No. 5:06-CV-353(CAR), 2009 WL 1796001, at *3 (M.D. Ga. 2009) (same); Camacho v. Nationwide Mut. Ins. Co., 188 F. Supp. 3d 1331, 1363-64 (N.D. Ga. 2016) (finding that O.C.G.A. § 9-12-10 is inapplicable when awarding postjudgment interest under 28 U.S.C. § 1961).

Section 1961 provides that postjudgment interest "shall be computed daily" and "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment."  28 U.S.C. § 1961.  MISF is entitled to postjudgment interest, pursuant to 28 U.S.C. § 1961, to accrue at the rate provided for in Section 1961 from the date of entry of final judgment to the date of payment.

### III.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Microtel Inns and Suites Franchising, Inc.'s Motion for Entry of Default Judgment as to Defendants Anira Hotels, Inc., Nayankumari Patel, and Chunilal Patel [13] is **GRANTED**.  The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff against Defendants Anira Hotels, Inc., Nayankumari Patel, and Chunilal Patel, jointly and severally, in

the following amounts: (1) damages in the amount of $595,231,.81, which represents $264,231.81 in unpaid Recurring Fees inclusive of interest, $291,000 in liquidated damages, and $40,000 in unpaid principal balance of the financial incentive; (2) prejudgment interest on the liquidated damages and on the remaining balance of the financial incentive in the amount of $93,798.31 in prejudgment interest; and (3) postjudgment interest, pursuant to 28 U.S.C. § 1961, to accrue at the rate provided for in Section 1961 from the date of entry of final judgment by the Clerk to the date of payment.

**SO ORDERED** this 31st day of January, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE